## Kaylor *v.* Cornwall Railroad Company, Appellant.

*Negligence—Railroads—Master and servant—Brakeman—Choice between dangers.*

In an action by a brakeman against a railroad company, his employer, to recover damages for personal injuries, it appeared that the plaintiff, in the performance of a duty absolutely necessary, started to alight from a moving train by means of an iron ladder attached for this purpose to the side of a freight car. While so attempting he was carried violently against a telegraph pole which was fifteen inches from the side of the car. The evidence established that except for the telegraph poles on one side, both sides of the car were alike under ordinary conditions, with respect to convenience and safety in alighting. It appeared, however, that the company had been relaying its tracks, and had deposited the old rails on the side of the track on which there were no poles. The plaintiff knew of this fact, and also saw at the time of the accident that the rails were covered with snow. He testified that it was the additional danger resulting from the rails being concealed by the snow that determined him to attempt to alight from the other side, since the danger there was open and exposed and was susceptible of some sort of measurement. *Held*, that the case was for the jury, and that a verdict and judgment for the plaintiff should be sustained.

*Evidence—Witness—Hearsay.*

Where a witness who was about to repeat something that the plaintiff said to him, was interrupted by an objection which prevented him from answering, the Supreme Court will not consider whether the evidence sought to be elicited from him was or was not competent.

Argued March 26, 1906.   Appeal, No. 222, Jan. T., 1905, by defendant, from judgment of C. P. Lebanon Co., June T., 1903, No. 9, on verdict for plaintiff in case of John Kaylor v. Cornwall Railroad Company.   Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before EHRGOOD, P. J.

On January 16, 1903, the plaintiff, a brakeman in the employ of the defendant, while in the act of descending on a side ladder from the top of a moving box car, was carried violently against a telegraph pole and seriously injured.   It appeared that the pole was only fifteen inches from the side of the car. There were no telegraph poles on the other side of the track, but old rails had been deposited there near the track, and on the day of the accident were covered with snow.   The plaintiff testified that it was the presence of these rails on one side of the track that induced him to attempt to alight on the side where the telegraph poles stood.

When Dr. A. B. Gloninger was on the stand he was asked on redirect examination the following question:

" Q. In reference to the plaintiff's mental condition as to testimony ? "

Mr. Shirk: Objected to; the doctor has fully gone into that.

The Court: The doctor has fully testified as to his condition.

" Q. I want to ask the physician whether this plaintiff is likely to receive a suggestion from another man's mind and being led in his testimony.   He has had this patient under surveillance for the last two years and knows his exact mental condition; he knows if he is permitted to testify he can do so."

Mr. Shirk: Objected to as irrelevant and incompetent; the credibility of the witness is for the jury or for the court under the evidence.

The Court: We will permit him to answer that question.

Witness: If I may be allowed, this man was unconscious for four days. When he got awake—

Mr. Shirk: This is objected to as not responsive to the question.

The Court: This is an explanation, I presume, of the answer.

Witness: When he got awake this scene was pictured in front of him. That is the point I wanted to make that was not brought out before, which I feel that I ought to tell. That man was struck by that pole because he saw it, and he told me when he got awake—

Mr. Shirk: Objected to as incompetent.

Mr. Light: It goes to the question whether it was not really a part of the res gestæ, because the plaintiff, if he had made statements at the time of the accident, certainly it would be competent for another man to testify as to what he had said; and if at a period of four days after the accident, when he first recovered consciousness, he makes a statement, it strikes me it almost comes down to the very time of the accident.

The Court: We will exclude that.

Mr. Shirk: This part of the picture I ask to have stricken out as incompetent evidence.

Mr. Shirk: This part of it which he speaks that this plaintiff was struck by a telephone pole, because the whole thing came before his eyes on the fourth day after he got awake, that this was done at that time, and that is not competent evidence what the man said at that time or what visions he had.

The Court: We will overrule that motion to strike out; exception to the defendant. [5]

The defendant requested the court to charge the jury as follows:

1. That under all the evidence in the case the verdict of the jury must be in favor of the defendant.

2. From the plaintiff's evidence, and under the uncontradicted evidence in the case, during at least two years before the accident, the plaintiff passed the telegraph pole at which he claims he was injured, at least four times a day on an average, while working as a brakeman on the road; that he was employed for about nine months before that time as a trackman upon the section along which the telegraph pole was erected

and by which he alleges he was struck while going southward on a moving train in the performance of his duties as brakeman on the railroad; that as such trackman his duties were to assist in the repairing of the railroad tracks and the telegraph lines ; that while far away from the pole, with which he alleges he came in contact, it was visible to him while going in the direction the train was running at the time of the accident ; that under these circumstances, as testified by the plaintiff, and under the uncontradicted evidence in the case, the plaintiff must be held as a matter of law to have assumed the risk of dangers incident to the situation and location of said telegraph pole, and the verdict must be in favor of the defendant.

3. The plaintiff was guilty of contributory negligence at the time of the accident complained of.

4. Under the plaintiff's own testimony, the cause of the injury was one that was open, permanent and visible in its character, and of which the plaintiff assumed the risk when he entered and continued in defendant's service for about two years in the capacity in which he was employed, namely, that of brakeman, and that the injury was the result of the plaintiff's own negligence in not paying proper attention to the risk which he incurred in the performance of the act in which he was engaged at the time of the injury.

All of the above points were refused. [1–4]

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them; and (5) ruling on evidence, quoting the bill of exceptions.

*Howard C. Shirk*, for appellant.—Plaintiff assumed the risk: Phila. & Reading R. R. Co. v. Schertle, 97 Pa. 450 ; Titus v. R. R. Co., 136 Pa. 618 ; Pittsburg & Connellsville R. R. Co. v. Sentmeyer, 92 Pa. 276 ; Augerstein v. Jones, 139 Pa. 183 ; Kehler v. Schwenk, 144 Pa. 348 ; Reese v. Hershey, 163 Pa. 253 ; Dooner v. Del. & Hudson Canal Co., 171 Pa. 581 ; Bellows v. Canal & R. R. Co., 157 Pa. 51 ; Fulford v. Lehigh Valley R. R. Co., 185 Pa. 329 ; Fletcher v. Traction Co., 190 Pa. 117 ; Kelly v. R. R. Co., 11 Atl. Repr. 659 ; Lovejoy v. Boston & Lowell R. R. Corporation, 125 Mass. 79.

Plaintiff was guilty of contributory negligence: Kelly v. B. & O. R. R. Co., 11 Atl. Repr. 659; City of Erie v. Magill, 101 Pa. 616.

*Warren G. Light*, for appellee.—The master is bound to furnish and maintain suitable instrumentalities for the duties required of his servants, and if he does not, he is liable for injuries from his neglect: Penna. & New York Canal & R. R. Co. v. Mason, 109 Pa. 296; Philadelphia & Reading R. R. Co. v. Huber, 128 Pa. 63; Trainor v. Railroad Co., 137 Pa. 148; Lillie v. American Car & Foundry Co., 209 Pa. 161; Weller v. Mfg. Co., 28 Pa. Superior Ct. 102; Stoltenberg v. R. R. Co., 165 Pa. 377; Patterson v. Pittsburg, etc., Railroad Co., 76 Pa. 389.

The plaintiff in entering the service of the defendant company·as a brakeman did not assume the risk of being struck by the telephone and telegraph pole: Brossman v. R. R. Co., 113 Pa. 490.

The plaintiff cannot as a matter of law be charged with contributory negligence under the facts of this case: Bradwell v. Ry. Co., 139 Pa. 404; Doyle v. Pittsburg Waste Co., 204 Pa. 618; Penna. R. R. Co. v. Kilgore, 32 Pa. 292; Penna. Canal Company v. Bentley, 66 Pa. 30; Mallory v. Griffey, 85 Pa. 275; Baker v. Gas Company, 157 Pa. 593.

OPINION BY MR. JUSTICE STEWART, November 2, 1906:

In disposing of the assignments of error which relate to the court's refusal to give binding instructions in favor of the defendant, it is only necessary to advert to a feature of the case, overlooked in the argument, yet quite sufficient in itself to have compelled a submission of the case to the jury. Since the several propositions advanced upon the argument in support of these assignments were framed without reference to this important and qualifying feature of the case, they may be regarded as abstract, requiring no discussion here. Whether a presumption of negligence arises from the mere fact, disassociated from all others in the case, that the telegraph pole with which the plaintiff came in contact was so erected and maintained that between it and the top of the car upon which the plaintiff was engaged, there was a space of only fifteen inches; or whether,

having shown so much, the burden still rested on the plaintiff to show actual negligence, were not the questions the court had to consider in ruling on the points submitted. As much may be said of the other question so pressed upon our attention, viz: whether the danger in connection with this pole, since it was apparent and obvious, was not a risk incident to plaintiff's employment and voluntarily assumed. Further facts in the plaintiff's case left these considerations without any determining significance.

The plaintiff, a brakeman in defendant's employ, was, immediately before the accident occurred, in his proper place on top of a freight car. To discharge a duty which required promptness and alacrity on his part, viz : to turn the switch and signal approaching trains,—a duty so important in its relation to the safety of the public and his coemployees, that no peril to himself, arising out of the usual and ordinary conditions, would have excused his disregard of it—he attempted to alight from the moving train, by means of an iron ladder attached for this purpose to the side of the car. While so attempting he was carried violently against a telegraph pole at the side, with the result that he was seriously injured. A like ladder was on the other side of the car where no telegraph poles were to be encountered. Except for these telegraph poles, both sides, under ordinary and usual conditions, were alike with respect to convenience and safety in alighting. There was no rule or regulation requiring the one to be used rather than the other, the employee being free to choose either, determining for himself according to conditions existing at the time. On the day of the accident, when the plaintiff reached the point where he attempted to alight, he encountered unusual and extraordinary conditions, which, according to his testimony, put him to the choice between two methods of alighting, both of which were manifestly dangerous. The defendant company at this point had been relaying its tracks, and had deposited the old rails which had been replaced, in the open space at the side of the track on which there were no poles. Plaintiff knew this fact, for on a previous occasion, when these rails were under his observation, he attempted to alight on that side, had fallen on them, and been injured by them. When the accident here complained of'

happened, the rails were covered with snow, and the hazard of alighting on that side was thereby very considerably increased. Plaintiff distinctly testified that it was this danger, resulting from the rails being concealed then by the snow, that determined him to attempt the other side, since the danger there being open and exposed, was susceptible of some sort of measurement. In view of this testimony it became a question, not whether the telegraph line in its construction at that point, corresponded to the standard observed and adopted by railroads generally along curves such as was here, but whether, in view of the peculiarly hazardous duties required of the plaintiff at this point, and the use to which defendant had appropriated the other side of the track, making it also a dangerous place to alight upon from a moving train, it was negligence in the defendant to maintain a telegraph pole at this particular point, which at the height of the car was only fifteen inches removed therefrom. If by so doing the plaintiff was subjected to dangers which in good faith the defendant ought to have provided against, it was negligence ; but this question could only be determined upon a consideration of all the facts of the case, and these were for the jury to find. Careful instructions as to the application of the law to the facts were required for a proper determination ; and these were given. There was no error in refusing the binding instructions prayed for.

The record gives no support to the remaining assignment of error. Whether the evidence sought to be elicited from the witness, Dr. Gloninger, would or would not have been competent, need not be considered. The record shows that the witness was interrupted in his answer to the question by a timely objection which prevented him from repeating anything that had been told him by the plaintiff.

The assignments of error are overruled and the judgment is affirmed.