426 A.2d 589

**COMMONWEALTH of Pennsylvania,**

**v.**

**Stephen SHAIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1981.

Decided March 13, 1981.

John Paul Curran, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Nancy Wasser, Philadelphia, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

We are again faced with a challenge to the propriety of the remarks of a prosecutor during his summation to the jury. For the reasons that follow we are constrained to find that the learned trial judge erred in failing to grant the timely motion for mistrial pressed by the defense.

Appellant, Stephen Shain, was convicted by a jury of murder of the first degree and possessing an instrument of crime—generally. Following the dismissal of post-verdict motions, appellant was sentenced to life imprisonment for the first degree murder conviction and to a concurrent term of two and one-half to five years imprisonment on the

weapons offense.[1] In this direct appeal the sole claim advanced is directed to the asserted impropriety of the prosecutor's closing statement. Specifically, objection was made, *inter alia*, to the prosecutor's argument to the jury that they could find that the killing resulted from a homosexual motive. It is contended by appellant, and we agree, that the record does not provide a basis for drawing such an inference.

At approximately 2 p. m., on November 9, 1977, the body of the decedent was discovered lying face down in a pool of water, in a heavily weeded area near 62nd Street and Woodland Avenue, in the City of Philadelphia. The victim was a male, five feet five inches in height, weighing 129 pounds, who had received fifty-seven (57) stab wounds, to the back, neck and shoulder areas. The decedent's blood alcohol level was found to be .17 and he was fully clothed when discovered.

The Commonwealth established the circumstances surrounding the killing from admissions made by appellant to

1. The Commonwealth urges us not to accept jurisdiction of the non-homicide offense in view of the failure of appellant to appeal that judgment of sentence to the Superior Court. *See* 42 Pa. C.S.A. §§ 704(a) and 742. The bifurcation of the direct appeal responsibility in criminal cases that resulted from our former obligation to take initial appeals from convictions in homicide cases, 42 Pa. C.S.A. § 722 has now been rectified by recent legislation. 42 Pa. C.S.A. § 722, *as amended* September 23, 1980, Act No. 1980–137. Under prior practice we required an appeal of the non-homicide convictions to the Superior Court and the perfunctory certification of those appeals to this Court. The instant objection by the Commonwealth is premised upon the appellant's failure in this instance to follow that procedure. Instead, appellant attempted to appeal both judgments of sentence to this Court.

If we were to refuse to assume jurisdiction over the appeal from the non-homicide judgment of sentence, we would be required to refer it to the Superior Court for disposition. In view of the belated objection raised by the Commonwealth, considering also the fact that if the correct procedure had been followed we would have decided these matters together, and that our disposition of the appeal from the homicide conviction may cast doubt as to the disposition of the appeal from the non-homicide judgment of sentence (which we would ultimately be called upon to resolve), we are satisfied that judicial economy would be best served by assuming jurisdiction over the entire matter.

his uncle, Mr. Morrow, and a statement given to the police by appellant at the time of his arrest. Mr. Morrow testified that appellant woke him at or about 3:00 or 3:30 a. m. on November 9, 1977 and told the witness that he, appellant, had just killed a man. Appellant, who appeared to be intoxicated, stated that three Puerto Ricans tried to rob him, that one of them slapped him and that he stabbed the person who had struck him. At first the witness dismissed the conversation as being fantasy. However, later during the day after receiving further information which established that a killing had in fact occurred, Mr. Morrow went to the police and reported what he had been told by appellant. After his arrest for this crime, appellant provided the police with the following version of the events.

This kid came walking up 62nd Street towards Woodland. As he was coming by the ramp Nicky seen him and called him. The guy came over and said hi. He looked like he was drunk; I didn't get his name. So, he sat down with us and I gave him one of my beers. The kid was talking to Nicky, he showed him a picture of something. Then Nick put his arm around him and said, 'C'mon, let's take a walk down the ramp.' So, I said, 'Where you going, what's up', and he didn't say nothing. So, we all walked down the ramp. I think I took a leak before we went down the ramp. Then as we were walking down the ramp, I was drinking my beers; the kid that was with Nicky turned around and slapped me in my face. I snapped out and pulled my knife out. I started stabbing the guy, the guy was holding on to the front of my coat. Then he just fell. There was water all around, he fell in the water and I didn't see no bubbles, it looked like he was breathing if you ask me. That's when Nicky said, 'f. . . it,' that's when I left. I went up to the top of the ramp, picked my beer up, put it in the bag and took it home. When I got home I woke my Uncle Jimmy and told him I think I killed a guy, I don't know.

On cross examination, a witness called by the defense, Ms. Rose LaGrotta, also stated that immediately before his ar-

rest, appellant told her he had stabbed a man who had "called him a lot of names." The murder weapon was recovered from appellant's home.

In establishing an accused's guilt in a homicide case, the prosecutor is not required to show motive. *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); LaFave, Scott, *Criminal Law*, § 29 (1972). However, where motive can be established it may be relevant to prove the identity of the perpetrator and/or the degree of the offense. LaFave, Scott, *supra*. Where the Commonwealth elects to prove motive, like any other fact, it must be established by legally competent evidence. *Commonwealth v. Adkins*, 468 Pa. 465, 364 A.2d 287 (1976); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). Inferences which the Commonwealth would have the factfinder draw must have a factual basis that would justify such inferences. *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Revty, supra*. A prosecutor may not misstate the evidence or mislead the jury as to the inference it may draw. *Commonwealth v. Tucker, supra; Commonwealth v. Revty, supra*. The mere fact that it is conceivable that an actor was propelled by a given motive does not warrant such an inference unless there is evidence to prove that motive was in fact a motivating force in bringing about the incident. *Commonwealth v. Tucker, supra; Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973); *Commonwealth v. Revty, supra*. In this case there is a complete absence of a factual predicate to suggest that the instant killing was motivated by homosexual activity.

The Commonwealth argues that there was a basis for the conclusion that homosexual overtones were present. The fact that the victim was of a physically slight build and to some degree mentally retarded; that the appellant had not been allowed to spend the evening with a lady friend as he had planned; that the area was dark; that a picture was shown to decedent by a third person (there is no indication as to the image or images depicted therein); and, that this

third party walked off with the victim with his arm on the victim (there is nothing in this record to suggest that contact had any sexual connotations). We reject the Commonwealth's premise that these factors would justify the jury's conclusion that appellant or the third party, Nicky, intended to sexually molest the decedent. The circumstances clearly did not affirmatively suggest a homosexual motive. The fact that the setting did not exclude that possibility did not warrant arguing such an inference without further support of its existence.

Our opinions have made it clear that a verdict of guilt should flow from an objective appraisal of the evidence and not as a result of appeals to passion and prejudices. *Commonwealth v. Starks, supra; Commonwealth v. Revty, supra.* Although there was nothing in the nature of the crime or the known facts surrounding it which would suggest sexual overtones, the prosecutor attempted to inject this element in a series of questions during the cross examination of appellant. First, the prosecutor in questioning appellant about certain lady acquaintances attempted to suggest that on the night in question appellant may have been sexually aroused.

Q. You were still outside at 2:30 or three o'clock in the morning, or a quarter after two in the morning, whatever time it was.

A. That's what I said, yes, that's correct.

Q. Drinking weren't you?

A. I had a can of beer in my hand, yes, I did.

Q. A little bit sexually frustrated that evening, would you say that you didn't have a woman there and you were drinking, feeling a little good, work is over, you want to relieve your sexual tensions a little bit?

*Mr. Furlong*: (Defense Counsel) Objection Your Honor.

A. I don't believe so. I don't get sexually upset about three days without a woman. I mean, no man would.

*Court*: Overruled.

The responses to these questions gave no basis for concluding appellant was sexually aroused. Thereafter, the prosecutor proceeded to explore the area further by suggesting an intent to molest the victim. Again appellant's responses unequivocably denied such an intention.

Q. Maybe you think taking that slight of build young boy back into the woods, back there down the ramp at three o'clock in the morning, maybe he was going to molest the young boy.

A. No thought entered my mind.

Q. That thought never entered your mind, did it?

A. No.

Q. How about you?

A. No.

Q. Were you going to molest him?

A. No, I was not.[2]

Despite the fact that there was no evidence in the trial record supporting this sexual theory, the prosecutor relying solely on the implications raised by his questions (and not the responses thereto) argued in closing to the jury as follows:

When I asked him the question about Cathy, going around to Cathy at two o'clock in the morning, Rose had left, there is no question, she had left. The man gets drunk, he is looking for some female company. He has driven her out, he explained that, "Oh, no, that didn't happen. I can go without sex for a week" whatever it was, but when I asked him the question that he said "No" about the homosexuality, about the molestation—

2. The Commonwealth points to the fact that no objection is now being made to the allowance of this line of questioning. We believe that this argument misses the mark. The issue is not whether the areas of inquiry were proper but rather whether the Commonwealth can use the implications arising from its questions to form a factual predicate for a theory where the responses to those questions refuted the suggested theory. Clearly, it is the response to the question that has evidentiary value not the question itself. *Phelin v. Kenderline*, 20 Pa. 354 (1853); *Kaylor v. Cornwall Railroad Co.*, 216 Pa. 134, 65 A. 65 (1906).

The word, in fact, I use, members of the jury, for the question was, "Did you molest, did you go back there to molest that young man?"

He looked down, the defendant, and you know you judge someone not by what they say, because I couldn't get him to say he stabbed anybody. I couldn't get him to say anything, he looked down and he said, "No", low voice, one word answer. The only time he gave a one word answer, we got a reaction from him. That's for you to decide whether that was a reaction, and you saw that area back there and you saw where they took that young boy or where he took him.

What did they go back there for? Did they go back to rob him? Why are they walking down back there? If they wanted a drink, they could have drank right back there near the top where they were drinking in the first place. Why walk all the way down that ramp into the bushes? I will put that into my argument when I talk to you about willful, deliberate and pre-meditated and malice.

We are asking you, members of the jury, to have some street sense, that's all. (N.T. 5.43–5.45)

This theory of a sexually frustrated assailant attempting to find release by a homosexual encounter with the victim and thereby causing his death was purely speculation on the prosecutor without an iota of support in the record. The prejudicial and inflammatory character of this argument is evident. If this argument had been confined only to the question of the identity of the perpetrator, it could *possibly* be argued that the error was harmless in view of the strength of the other evidence establishing that appellant stabbed this victim. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Pearson*, 427 Pa. 45, 233 A.2d 552 (1967); *Commonwealth v. Cooper*, 240 Pa.Super. 477, 362 A.2d 1041 *cert. denied*, 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1976).

However, this argument was not confined to the question of the identity of the perpetrator, but was also offered for consideration in determining whether appellant had the req-

uisite state of mind for murder of the first degree. We cannot say that the evidence establishing the degree of guilt as murder of the first degree was so overwhelming as to render the effect of this unfounded argument harmless. We are aware the 57 stab wounds may reflect a specific intent to kill and justify the verdict. The fact that the inference drawn because of the nature of the killing might alone support a verdict of first degree murder does not provide a basis for concluding that the evidence was so overwhelming that the prejudice resulting from the error could not have influenced the factfinder's judgment on that point. *See e. g. Commonwealth v. Story, supra.* Thus the judgment of sentence imposed upon the murder information must be reversed and a new trial awarded.

However, a different result must be reached as to the conviction of the crime of possessing an instrument of crime generally. There was in this case overwhelming evidence to establish this offense. In addition to the various admissions by appellant of the use of the knife in the killing, the weapon was recovered from appellant's residence after the killing. Under these circumstances, it cannot be concluded that the unavoidable effect of the improper argument tainted the jury's judgment in reaching the verdict as to this charge. *See, Commonwealth v. Starks, supra; Commonwealth v. Revty, supra.*

Accordingly, the judgment of sentence entered upon Information Number 1369, upon which the appellant was found guilty of murder of the first degree, is reversed and a new trial awarded. The judgment of sentence entered upon Information Number 1367, possessing an instrument of crime generally, is affirmed.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a dissenting opinion in which KAUFFMAN, J., joined.

LARSEN, Justice, dissenting.

I dissent. The majority is not, as it opines, "constrained" to find error in the trial court's ruling—to the contrary, the majority has reached out to arrive at this conclusion and cause yet another prosecution of a defendant convicted after a perfectly fair trial.

A prosecutor is not limited in his remarks to a jury to merely reciting the direct evidence, and he may argue and point out any legitimate inferences which may be drawn from that evidence. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); ABA Standards Relating to the Prosecution Function, Section 5.8(a); and *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978). The evidence introduced in the instant case discloses that: a) the victim was very slight of build and mentally retarded; b) both the victim and appellant were intoxicated; c) the victim showed some sort of picture to one of appellant's friends; d) appellant's friend then put his arm around the victim, who was not previously acquainted with appellant or his friend, and the two escorted the victim into the bushes; and e) appellant had recently separated from his girlfriend. From this evidence, it is quite reasonable to infer that appellant and his friend had sexual motives in taking the victim into the bushes and, as the trial court which heard and observed all of the witnesses in this case noted on page 3 of its opinion: "we do not think a pronouncement from Dr. Freud was required as a prerequisite to the reasonable assumption that some sort of homosexual activity was afoot." It was, therefore, clearly permissible for the prosecutor to argue this theory to the jury in his closing remarks, *Commonwealth v. Tucker, supra,* and the trial court did not err in denying appellant's request for a mistrial.

Furthermore, the prejudicial and inflammatory character of the prosecutor's argument is not, as the majority asserts, "evident". This was a heinous and brutal murder in which *the victim was stabbed 57 times.* The majority suggests that if the jury believed appellant's contention that this merciless attack was provoked by a single *slap* in the face

(not a blow), it could have found that appellant did not possess a design to kill while inflicting 57 stab wounds. This suggestion is absurd. And, the majority's conclusion that a reference to the possibility of homosexual activity by adults could have so inflamed the jury as to prevent them from giving objective consideration to appellant's degree of guilt in stabbing a person more than 50 times, is even more ludicrous. In my opinion, as a matter of law, the type of attack involved here shows an intent to kill and, also as a matter of law, a mere slap in the face could not affect that conclusion. Therefore, the prosecutor's remarks were clearly unrelated to the jury's verdict of guilty of murder of the first degree, the majority's imagined connection to the contrary notwithstanding.

Accordingly, I dissent and would affirm the judgments of sentence.

KAUFFMAN, J., joins in this dissenting opinion.