603 A.2d 1014

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Nathaniel McNAIR, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided Feb. 21, 1992.

Donald M. Padova, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Kathy L. Echternach, Philadelphia, and Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We are presently required to review the conviction of Nathaniel McNair (Appellant) of murder of the first degree and the sentence of death imposed on him pursuant to 42 Pa.C.S. § 9711(h)(1).[1] Appellant was arrested and charged with murder, voluntary manslaughter, involuntary manslaughter, simple and aggravated assault, conspiracy, possession of an instrument of crime and possession of a concealed weapon.

These charges arose out of a shooting spree on November 4, 1987, in the City of Philadelphia near the intersection of 16th and West York Streets, in which Appellant shot and killed Anthony Gates and then turned his gun on Leon Washington, a witness to the shooting, who was standing within a few feet of Gates at the time of his death.

At trial, the Commonwealth chose not to proceed against Appellant on the charges of conspiracy, involuntary manslaughter, possession of a concealed weapon, or simple

1. 42 Pa.C.S. § 9711(h)(1) provides:
   A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

assault, but did proceed on the charges of murder of the first degree, aggravated assault and possession of an instrument of crime. A jury was selected on November 16, 1988, and Appellant was tried in the Court of Common Pleas of Philadelphia County with the Honorable George J. Ivins presiding.

On November 21, 1988, the jury returned its verdicts of guilty of murder of the first degree, aggravated assault and possession of an instrument of crime. A separate sentencing hearing was held, following which the same jury fixed the penalty at death. Post-verdict motions were argued and denied and the trial court sentenced Appellant to death on the murder of the first degree conviction, followed by concurrent terms of imprisonment of not less than one year nor more than two years on the possession of an instrument of crime conviction, and not less than five years nor more than ten years on the aggravated assault conviction. This automatic appeal followed.

█ It being mandated in death penalty cases to review the sufficiency of the evidence, we begin our review of this matter with a determination of whether the evidence presented at trial was sufficient to support the jury's verdict of murder of the first degree. *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699 (1989); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

█ When reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990).

Using this standard, the evidence adduced at trial, together with all reasonable inferences in favor of the Commonwealth, discloses the following. At about 10:00 p.m. on November 4, 1987, Leon Washington, Anthony Gates and

some of their friends were drinking beer in a playground located at 15th and York Streets in the City of Philadelphia. At about this time a girl approached the group of men and asked where she could get some "nickel caps" (a slang term for $5.00 worth of cocaine). Washington teasingly responded that he did have "nickel caps" when in reality he did not and began a conversation with the girl. Eventually the girl realized that Washington had nothing to offer her and she ended the conversation and began using a swing.

When she attempted to jump off the still moving swing she fell hitting her head on the pavement. Washington indicated that he believed she may have been injured and ran down the street with his friends to a nearby bar, the Red Top Bar, in order to phone for help. Because the phone at this bar was busy, they proceeded to a dry cleaning store across the street from the bar and tried to use their phone which was also busy.

Within ten minutes of the girl's injury, Washington and his companions were standing on the corner of 16th and York Streets where they were confronted by some other men, including Appellant, and the girl. The girl pointed out Gates, Washington, and another companion (Maurice Evans) to Appellant, whereupon he pulled out a gun and fired once at Gates, hitting him from a range of one and one half to two feet in the upper left side of the front of his chest.

At the sound of the gun discharging everyone began running, including Washington who was six feet behind the decedent. In the attempt to flee, Washington tripped over Evans and fell to the ground, and Appellant began shooting at Washington as he laid at his feet, hitting him in the hand and stomach while he pleaded to be left alone. As Washington struggled to escape, Appellant shot at him a third time, this time hitting him in the side as he finally managed to get to his feet and run away from his assailant. Gates died shortly after being shot and Washington suffered serious injuries which required extensive hospital treatment including having a colostomy operation performed.

Aside from Evans' and Washington's eyewitness testimony, a Christine Jones, who was sitting on the steps of a house which looked out on the murder scene, was able to corroborate that she saw a girl point out Evans, Washington and Gates to Appellant. This witness was also able to testify that she saw Appellant walk towards these three men and begin shooting at them.

Taking all of this direct, eyewitness testimony together, a jury could easily conclude beyond a reasonable doubt that Anthony Gates's death was a homicide. The Crimes Code defines murder of the first degree as, "[a] criminal homicide ... committed by an intentional," i.e., "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). From the use of a deadly weapon on a vital part of the body, the jury could infer that the killing was intentional and malicious. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). From the manner of the killing, the jury could conclude that the killing was premeditated and the jury could conclude that Appellant committed the crime from the direct evidence linking him with the shootings. Accordingly, we are more than satisfied that sufficient evidence exists in this record to support the jury's verdict of murder of the first degree.

■ We are also satisfied that the evidence is sufficient to establish that Appellant intentionally used a deadly weapon to cause bodily injury to Leon Washington and that the guilty verdict on the aggravated assault charge was proper. 18 Pa.C.S. § 2702(a)(4) [2].

■ Finally, Appellant's use of a loaded gun on his victims is more than sufficient to establish his guilt of possession of an instrument of crime. 18 Pa.C.S. § 907(a) [3].

---

**2.** 18 Pa.C.S. § 2702(a)(4) defines Aggravated Assault as follows:
(a) Offense defined.—A person is guilty of aggravated assault if he: (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon....

**3.** 18 Pa.C.S. § 907(a) Possessing instruments of crime

Since sufficient evidence exists in this record to support the convictions returned by the jury, we shall proceed to consider Appellant's allegation of prosecutorial misconduct and trial court error.

## PROSECUTORIAL MISCONDUCT

Appellant argues that the prosecutor, in her opening to the jury, improperly referred to the anticipated testimony of Appellant's sister who did not testify at the trial. Specifically she told the jury that Appellant's sister was the girl who fell from the swing and that she would so testify and that she pointed out the three men to her brother, but that she did not know that he was carrying a gun.

This witness was present during the trial but when the Commonwealth was prepared to call Maria McNair, she could not be located, and a bench warrant was issued for her. The trial was continued until the following day so that the witness could be found. When the trial court was satisfied that a good faith effort had been made to locate this witness, it concluded that a continuance of the proceedings was not warranted and instructed counsel to continue with the case. The Commonwealth rested at this point as did the defense. During the closing argument to the jury, the Commonwealth argued that Appellant's motive in shooting his victims may have been revenge for the injury the girl had suffered while in the company of Washington and the decedent.

Appellant argues that since this witness did not testify it was improper for reference to have been made to her during the opening to the jury or during the closing argument to the jury. We disagree. First, we note that there was evidence from an eyewitness that the girl hurt on the playground was the same girl who pointed out the victims to the Appellant immediately before he shot them and,

(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

therefore, the prosecutor could draw a legitimate inference from the evidence that Appellant shot the victims in response to what the girl may have told him.

It is well established that a prosecutor may argue all reasonable inferences that may be derived from the evidence. *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984). The identity of the girl was not disclosed during the closing nor was it emphasized in any way that the girl absented herself from the trial. The only inference was one drawn from the eyewitness evidence of record and we discern no error on the part of the prosecutor in so doing. *Commonwealth v. Shain*, 493 Pa. 360, 426 A.2d 589 (1981).

It is true that the witness was identified as Appellant's sister during the opening, when the prosecutor had a good faith and reasonable basis for believing that this witness would testify at trial. *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977). The prosecutor cannot be charged with misconduct for this reference when, through no fault of her own, the witness absented herself during the trial, making it impossible for her to testify and when no further mention was made of Appellant's familial relationship to this witness. Appellant has not shown how the prosecutor prejudiced his cause because of the actions of this witness and his claim of misconduct is rejected. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988).

## PENALTY PHASE ERRORS

Appellant also argues that there was insufficient evidence to establish that his conduct knowingly created a "grave risk of death to others" and that the jury should not have been permitted to consider the existence of this aggravating circumstance. 42 Pa.C.S. § 9711(d)(7).

Appellant fired twice at Gates, first hitting him and then missing him. Washington and Evans were directly behind Gates and, when the first shot was fired, it so startled the people on this crowded street corner that they began to run. Washington fell over Evans and within seconds Appellant pumped three bullets into him.

Appellant's argument that his shooting of Gates and Washington should be considered as separate episodes which did not put others in risk of death is totally devoid of merit. Because these shots were fired in such a short time and at specific people who were running for safety, the jury was justified in concluding that sufficient evidence exists for a finding that others were placed in grave risk of death during the commission of Gates's murder. Indeed, Leon Washington's serious injuries conclusively establish that he was put in grave risk of death by Appellant during the murder.

■ Appellant finally argues that the trial court erred when it did not define the word "knowingly" when instructing the jury on the aggravating circumstance of knowingly creating a grave risk of death to others. We have recently rejected this argument, noting that this term is one of common understanding that does not need a specific instruction. *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992). Appellant's contrary arguments are rejected.

■ Pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases" (42 Pa.C.S. § 9711(h)(3)(iii), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under our Death Penalty Statute, aided by the comprehensive study prepared at our order by the Administrative Office Of Pennsylvania Courts. (See *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). That review reveals no excess or disproportionality in the sentence imposed as compared to other first degree murder cases where the evidence involved the one aggravating circumstance found here and no mitigating circumstances.

For the foregoing reasons, we sustain the convictions and affirm the judgments of sentence. The Prothonotary of the Supreme Court is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sen-

tences and review by this Court to the Governor pursuant to 42 Pa.C.S. § 9711(i).

NIX, C.J., concurs in the result.