J-S01017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SANTONIO PIERRE MALONE | : | |
| | : | |
| Appellant | : | No. 516 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 20, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000557-2022

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: APRIL 23, 2024**

Santonio Malone appeals from the judgment of sentence imposed after a jury found him guilty of murder in the first degree, attempted murder, and possession of an instrument of crime ("PIC").[1]  He challenges the sufficiency of the evidence to convict him of these offenses.   Additionally, Malone's counsel filed a petition to withdraw representation and an accompanying brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967).  Upon review, we grant counsel's petition, and affirm the judgment of sentence.

The trial court set forth the facts as follows:

Alorfi Ramirez and Tristan Wolfe, [] Juan Carlos Romero and another man, had been together at a bar in the Borough of Mahanoy City, Schuylkill County, Pennsylvania [in] the early

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a) – 2501, and 907.

morning of October 24, 2021, prior to deciding to go to an after-hours hookah lounge in the same borough. The men went to, but were not allowed in the lounge. A verbal argument ensued between [Romero] and [Malone] on the sidewalk outside the lounge. After a period of time, [Malone] pointed a handgun at Ramirez's head as Ramirez walked away from the lounge toward his car parked in the street. At the time, [Romero] was on his cellphone contacting 911 for help. [Malone] then went towards Romero, and put the handgun at Romero's head. As Romero, who was still on his cellphone with 911 asking for help, tried to evade [Malone] by moving further across the street from the lounge, [Malone] shot the unarmed Romero numerous times. [Malone] then returned to Ramirez, who was standing by his car, and shot Ramirez in the left arm, torso, upper thigh, and back. While Romero was dying, and Ramirez lay injured and bleeding on the road, [Malone] got into his car and left. He subsequently fled to Tennessee where he was eventually apprehended.

Dr. Wayne Ross performed an autopsy on Romero who had died on the sidewalk across the street from the lounge prior to police arrival at the scene. Dr. Ross found four gunshot wounds to the body, including one that entered Romero's heart and lungs and one through each left and right buttocks. Dr. Ross opined that Romero died from the wounds to his heart, lungs and buttocks.

Trial Court Opinion, 5/26/23, at 2. Malone was arrested and charged with multiple offenses.

Following trial, the jury found Malone guilty of, *inter alia*, first-degree murder for the shooting death of Romero, attempted homicide for the shooting of Ramirez, and PIC. The court sentenced Malone to life in prison, 20 to 40 years' incarceration, and 2 ½ to 5 years' incarceration to run consecutive to the life sentence, for these convictions respectively. Malone did not file a post-sentence motion.

Malone filed a timely *pro se* appeal.[2]  He and the trial court satisfied the requirements of Pennsylvania Rule of Appellate Procedure 1925.[3]

Counsel filed a petition to withdraw from representation and an **Anders** brief with this Court.  Malone did not retain independent counsel or file a *pro se* response to the **Anders** brief.

Before we may consider the issues raised in the **Anders** brief, we must first consider counsel's petition to withdraw from representation.  **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) (holding that, when presented with an **Anders** brief, this Court may not review the

---

[2] We observe that at the time of this filing, Malone was represented by counsel. Hybrid representation is not permitted in this Commonwealth. **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011).  However, this Court's Internal Operating Procedure ("I.O.P.") 65.24 provides that "[a] *pro se* notice of appeal received from the trial court shall be docketed, even in instances where the *pro se* [appellant] was represented by counsel in the trial court." 210 Pa. Code § 65.24(1); **see also Commonwealth v. Ellis**, 626 A.2d 1137 (Pa. 1993).

[3] Malone's Rule 1925(b) statement was filed untimely.  However, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand [pursuant to Rule 1925(c)] but may address the issues on their merits." **Commonwealth v. Brown**, 145 A.3d 184, 186 (Pa. Super. 2016); **see also Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) ("[I]f there is an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").  Here, the trial court addressed the sufficiency issue, albeit very briefly.

We further note that when counsel intends to file an **Anders** brief and asks this Court to withdraw, counsel should file a statement pursuant to Rule 1925(c)(4) rather than Rule 1925(b).

merits of the underlying issues without first passing on the request to withdraw). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, counsel must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points [the defendant] deems worthy of this Court's attention.

**Commonwealth v. Edwards**, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Once counsel has satisfied the **Anders** requirements, it is then this Court's responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious

- 4 -

issues that counsel, intentionally or not, missed or misstated."
***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018).

Here, counsel filed both an ***Anders*** brief and a petition for leave to withdraw as counsel. Further, the ***Anders*** brief substantially comports with the requirements set forth by our Supreme Court in ***Santiago***. Finally, the record included a copy of the letter that counsel sent to Malone of counsel's intention to seek permission to withdraw and advising Malone of his right to proceed *pro se* or retain new counsel and file additional claims. Accordingly, as counsel has complied with the procedural requirements for withdrawing from representation, we will conduct an independent review to determine whether Malone's appeal is wholly frivolous.

In the ***Anders*** brief, counsel indicates that Malone wishes to raise the following issue: Did the Commonwealth present sufficient evidence to prove the charges of murder in the first degree, attempted murder, and PIC beyond a reasonable doubt? ***Anders*** Brief at 4.

In its opinion, the trial court noted that Malone only challenged the sufficiency of the evidence to sustain his conviction for first degree murder in his Rule 1925(b) statement. The court maintained however that Malone waived this issue because he did not identify in his statement the elements for which there was insufficient evidence. Trial Court Opinion, 5/26/23, at 3.

Ordinarily, an issue is waived when the Rule 1925(b) statement fails to set forth an issue for appellate review. In particular, an issue challenging the

sufficiency of the evidence is waived if the Rule 1925(b) statement does not specify the element(s) for which the evidence was insufficient. *See* Pa.R.A.P. 1925(b)(4)(vii); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). However, "[p]ursuant to *Anders*, this Court must review the merits of all claims set forth in an *Anders* brief in order to determine whether to grant counsel's petition to withdraw from representation, despite the fact that the issues have been waived" for failure to comply with Rule 1925. *Commonwealth v. Bishop*, 831 A.2d 656, 659 (Pa. Super. 2003). Thus, we will address Malone's challenge to the sufficiency of the evidence for all three convictions.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa. Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented. *Commonwealth v. Beasley*, 138

A.3d 39, 45 (Pa. Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa. Super. 2016).

To establish first degree murder, the Commonwealth must prove: (i) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S.A. § 2502(a); ***Commonwealth v. Houser***, 18 A.3d 1128, 1133 (Pa. Super. 2011). An intentional killing is a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a) and (d). "Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." ***Commonwealth v. Drumheller***, 808 A.2d 893, 910 (Pa. Super. 2002).

To establish attempted homicide, the Commonwealth must prove the following:

> A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901(a).
>
> Criminal attempt is a specific-intent crime. Thus, attempted murder requires a specific intent to kill. ***Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

***Commonwealth v. Palmer***, 192 A.3d 85, 88 (Pa. Super. 2018) (brackets and some quotations omitted).

Regarding intent for first degree murder and attempted homicide, we observe that, where the defendant does not "verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor." *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003). To the extent "the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." *Id*. We may "infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Gease*, 696 A.2d 130, 133 (Pa. 1997).

Lastly, to establish PIC, the Commonwealth must demonstrate that the defendant "possesse[d] an instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907. An instrument of crime is defined as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S.A. § 907(d)(2).

Here, the Commonwealth presented sufficient evidence for the jury to convict Malone of all three crimes. As the trial court noted, the Commonwealth presented eyewitness testimony and video evidence of the events leading up to, during, and after the shootings at trial. Additionally, the Commonwealth presented Romero's 911 call asking for help, during which gunshots could be heard. Trial Court Opinion, 5/26/23, at 1.

Regarding Malone's convictions for first degree murder and attempted murder, the evidence showed that Malone was the one that fired the shots that night. Ramirez and Wolfe identified both identified Malone as the shooter.

- 8 -

N.T., 2/6/23, at 105, 181. The Commonwealth supplemented their testimony with the video. *Id.* at 120, 191. Eddie Adams, who was outside the hookah lounge that night, also identified Malone as the shooter, albeit reluctantly. *Id.* at 164.

The evidence further showed that Malone had the requisite intent to kill Romero and attempt to kill Ramirez. As the situation was escalating and before Malone started shooting, Wolfe tried to rationalize with Malone and diffuse the situation. Wolfe told Malone, "you don't have to do this." Despite Wolfe's pleas, Wolfe testified that Malone "had it in his head" and "he didn't think twice." *Id.* at 176-177. Malone then said, "F this." Malone put the gun to Ramirez' head and walked him over to his car. *Id.* at 121, 177. Malone told Ramirez: "Empty your f'--- pockets. I'm robbing you." *Id.* at 178. Ramirez pleaded with Malone not to shoot him. Malone demanded Ramirez' car keys and pushed him up against his car. The gun went off and Ramirez fell. *Id.*

Malone then realized Romero was on the phone calling for help, and he turned his attention to Romero. When Romero ran toward a nearby gas station, Malone shot at him multiple times. Romero pleaded with Malone not to shoot him. Romero changed directions, but Malone shot at him again several times. Romero fell to the ground and lay there. *Id.* at 178-180. Malone hit Romero four times: one bullet hit him in the arm and traveled through his lung and heart; another bullet grazed his abdomen; and two

others hit each side of his buttocks. *Id.* at 240-241. Romero died at the scene.

Malone then came back over to the lounge. He saw Ramirez, who had not been shot earlier when the gun went off, getting up. Malone shot Ramirez multiple times. *Id.* 180-181. Malone shot Ramirez in the abdomen, spine, arm, and leg. *Id.* at 131, 223. His injuries were very serious and could have been life threatening. *Id.* at 225.

Malone's intent was obvious from the shootings themselves. As such, it was reasonable for the jury to conclude that Malone possessed the specific intent to kill. *See Hall*, 830 A.2d at 542. Moreover, the circumstances surrounding the shootings demonstrated that intent. Despite the pleas of the three men, Malone ignored them and proceeded to employ the gun to commit the crimes for which he was convicted. Notably, Malone pointed the gun at Ramirez' head to rob him. Malone shot Romero repeatedly as he tried to run away. He also shot Ramirez multiple times. These factors are relevant in determining intent. *See Commonwealth v. Geathers*, 847 A.2d 730, 737 (Pa. Super. 2004). Additionally, "[a] gun is a lethal weapon; pointing it towards a person, and then discharging it, speaks volumes as to one's intention." *Hall*, 830 A.2d at 543. Further, Malone's use of a deadly weapon on vital parts of Romero and Ramirez' body demonstrates intent from which the jury could infer Malone intended to kill both Romero and Ramirez and acted with malice. *See Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013); *Commonwealth v. Weiss*, 776 A.2d 958, 963 (Pa. 2001).

- 10 -

Tragically, but significantly, the gunshot wound that hit Romero's lung and heart was fatal.

The evidence also was sufficient to sustain Malone's conviction for PIC. As discussed above, the evidence clearly showed that Malone shot Romero and Ramirez multiple times with a gun. Our Supreme Court has long held that a defendant's "'use of a loaded gun on his victim is more than sufficient to establish his guilt of possession of an instrument of crime.'" *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. McNair*, 603 A.2d 1014, 1017 (Pa. 1992)).

Based upon our review of the record and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to sustain Malone's convictions.

For the foregoing reasons, we conclude that Malone's sufficiency claim on appeal is frivolous. Further, in accordance with *Dempster*, we have independently reviewed the certified record to determine if there are any non-frivolous issues that counsel may have overlooked. Having found none, we agree that the appeal is wholly frivolous. Therefore, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2024