J-A08004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES L. KULOW | : | |
| | : | |
| Appellant | : | No. 787 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001280-2018

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                 Filed: December 24, 2020

Charles L. Kulow appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions by a jury of third-degree murder,[1] two violations of the Uniform Firearms Act (VUFA),[2] and possession of an instrument of crime (PIC).[3]  After careful review, we affirm, relying in part on the trial court opinion.

The trial court set forth the facts of the case as follows:

[Philadelphia] Police Officer Frank Ray testified that on November 17, 2016, he received a rescue call for a drunk male outside [on] the 8000 block of Frankford Avenue.  When Officer Ray arrived [at 8037 Frankford Avenue,] he observed a very tall white male, with a big beard, lying on the sidewalk, bleeding, with vomit coming out of his nose and mouth.  The male was pronounced dead at the

---

[1] 18 Pa.C.S.A. § 2502(c).

[2] 18 Pa.C.S.A. §§ 6106, 6108.

[3] 18 Pa.C.S.A. § 907(a).

scene [and] later identified as [] Brian Keith Jones. Officers recovered a cell phone charger, [a] marijuana bowl with no marijuana, a lighter, and a few knives from [Jones'] body.

While Officer Ray was holding the scene, two women climbed out of a back window of the apartment building that [Jones] was lying in front of [] and jumped into the bed of a pickup truck. Officer Ray observed the pickup truck pull off at a high rate of speed. Officer Ray recovered a money clip on the ground in the back of the apartment building. A few minutes after the truck pulled off, a man named Thomas Vendetti walked up to Officer Ray and claimed the money clip was his. Vendetti identified himself as the owner of the pickup truck that had just driven away, and told officers that the truck was currently parked one block away. Vendetti was held for questioning.

*     *     *

Allen Lazicki testified that on November 17, 2016, he lived in the second floor apartment at 8037 Frankford Avenue. Lazicki lived there with a woman named [Christina] Leaman[, and] Leaman's friend[,] Shannon Burns[.] On [that date,] when Lazicki arrived home at 5:35 p.m., Leaman, Burns, Burns' boyfriend (Anthony Felix), and [Jones] were all present in his apartment. Lazicki greeted everyone in the apartment and headed to the back bedroom to take a nap.

While in his bedroom, Lazicki heard a "bang." Leaman and Burns ran into Lazicki's bedroom. They appeared to be frightened, and told Lazicki that the "bang" was a gunshot. When they left his bedroom, [Kulow] walked in and said "I'm sorry" and told Lazicki that he shot [Jones] in the shoulder.

Lazicki testified that [Kulow] was a member of the Breed Motorcycle Gang. [Kulow] told Lazicki that he shot [Jones] because [Jones] was bragging that [Jones] was an enforcer with the Breed [Motorcycle Gang], when he was not. After [Kulow] told Lazicki that he shot [Jones], Lazicki immediately left the apartment. As he was leaving, he saw [Jones] sitting in a recliner with his eyes closed and his head laying on his chest. Lazicki did not observe any blood.

[] Leaman testified that she knew [Kulow] by his nickname "Ruthless," and knew him to be a member of the Breed Motorcycle Gang. [] On the day of the murder, at [Kulow's] request, Leaman contacted [Jones] and told [Jones] that [Kulow] wanted to talk to

him. Leaman, [Jones], Burns, and Felix were all in Lazicki's apartment when Lazicki arrived home. Shortly after Lazicki arrived, Leaman and Burns went into the bathroom and closed the door. While Leaman was in the bathroom, she heard a "loud pop." Leaman never observed [Kulow] enter the apartment.

Burns left the bathroom to investigate. She returned with Felix and they were both "freaking out." Felix said "I gotta get out of here, there's crazy shit going on." When Leaman left the bathroom, she saw [Jones] sitting in the recliner trying to breathe. [Jones] was making gurgling noises and couldn't speak. [Kulow] and another [unknown] male [] were standing near [Jones]. [Burns] heard [Kulow] tell [Jones] "You're no Breed enforcer."

Lazicki and Felix both left the apartment while [Jones] was still in the recliner. [Kulow] and the unknown male lifted [Jones] from the chair, and placed him on a sheet. The last time Leaman saw [Jones,] he was on his back being dragged down a flight of stairs, which lead to the outside of the apartment building.

Leaman and Burns remained in the apartment and talked about what had happened. While they were talking, they wiped up a "spot" of blood on the floor. Leaman called her friend Vendetti to give her and Burns a ride. [Leaman] directed Vendetti to come to the back of the apartment building because the police were out front. When Vendetti arrived, Leaman and Burns climbed out of a back window and onto the bed of Vendetti's truck. After they had driven for approximately one to two blocks, Leaman realized that she had dropped her phone. Vendetti pulled over and went back to the crime scene to look for Leaman's phone. Burns left on foot.

While Leaman was in the truck, police arrived and took her to the Homicide Division.

\*   \*   \*

[The jury viewed v]ideo surveillance from the apartment complex, marked as Commonwealth Exhibit 45[.] The video begins with an outside view of the apartment building. Lazicki can be seen walking into the building. The video switches to a camera inside the building, and Lazicki can be seen walking up the stairs to the second floor. Twenty-five minutes and five seconds later [Kulow] can be seen walking up to and into the building. [Kulow] walks to the second floor. The unknown male can be seen in the same clip

following behind [Kulow]. The unknown male enters the apartment building roughly 12 seconds after [Kulow].

After an eight minute and ten second gap, Felix can be seen exiting the apartment with his bike and riding off. Three minutes and thirty-five seconds later, Lazicki walks out of the apartment and down the street. Approximately thirty seconds after Lazicki leaves, a blue towel is thrown over the interior camera.

One minute and twenty-five seconds later, the exterior camera shows Burns leave the apartment. Burns then drags a trashcan from off camera to the door of the apartment building. [Kulow] and the unknown male help Burns position the trashcan, and then the two men drag [Jones'] body behind the trashcan and walk off down the street. Burns goes back inside the building.

One hour, fifty-two minutes, and thirty-five seconds later, a camera showing the rear parking lot of the apartment building captures [Burns' and Leaman's] exit. A truck reverses to the back of the apartment building and Vendetti climbs onto the tailgate. Vendetti takes two bags from the women and places them in the truck. Vendetti then helps Burns and Leaman climb from a second floor overhang onto the truck.

Dr. Albert Chu, Deputy Chief Medical Examiner for Philadelphia, testified that [Jones] was shot once in the back of the left shoulder. The wound was a "contact entrance wound," [meaning the barrel of the firearm was in contact with Jones' body when fired.] The bullet traveled from [Jones'] left shoulder through his fifth rib, left lung, heart, liver, stomach, pancreas, and was eventually recovered in the small intestine. Dr. Chu opined that the wound would have caused death within one to two minutes. Additionally, the wound could have caused [Jones] to vomit and/or cough up blood.

It was stipulated by counsel that [Kulow] did not possess a license to carry a firearm in the City and County of Philadelphia.

Trial Court Opinion, 5/13/19, at 2-8 (internal citations and footnotes omitted).

At the conclusion of the trial, a jury convicted Kulow of the above-stated offenses. On February 7, 2019, the court sentenced Kulow to an aggregate sentence of seventeen to thirty-four years' imprisonment: seventeen to

thirty-four years' imprisonment for third-degree murder, two-and-one-half to five years' imprisonment for each VUFA offense, each to be served concurrently with the other and concurrently with the lengthier sentence, with no further penalty for PIC. On February 19, 2019, Kulow filed a post-sentence motion, which the court denied on February 21, 2019. On March 18, 2019, Kulow filed a timely notice of appeal; both Kulow and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Kulow presents the following issues for our review:

(1) Was the evidence insufficient for the jury to find that [Kulow] committed [the] crimes of [t]hird-[d]egree [m]urder, [the section 6106 and section 6108 violations of the Uniform Firearms Act,] and [PIC]?

(2) Did the trial court abuse its discretion when it included the jury instruction for accomplice liability?

Appellant's Brief, at 4.[4]

_____

[4] For reasons unknown to this Court, Kulow has failed to provide a copy of the video exhibits played at trial. In an effort to obtain the video, this Court's prothonotary contacted the parties and the trial court's prothonotary. Additionally, this Court issued an Order, pursuant to Pa.R.A.P. 1926, directing the Philadelphia Clerk of Courts to transmit the video exhibits within 15 days of the date of the filing of the order. **See** Order, 10/16/20. The trial court acknowledged receipt of our order. **See** Trial Court Acknowledgment of Order, 10/23/20. Nevertheless, more than six weeks have elapsed since this Court issued that order, and we have yet to receive the exhibit.

"It is the appellant's responsibility to provide a complete and comprehensive record to the reviewing court for the purposes of appeal." **Commonwealth v. Feflie**, 581 A.2d 636, 640-41 (Pa. Super. 1990). We may deem any claim waived where an appellant fails to certify the complete record for our review. **See Commonwealth v. Bongiorno**, 905 A.2d 998, 1001 (Pa. Super. 2006) (en banc). Whether waiver is warranted is "a question that must be evaluated

Kulow first challenges the sufficiency of the evidence with regard to each of his convictions. He claims that the evidence was insufficient because "[t]he testimony undeniably indicates that the unknown white male was in possession of a gun and was the person who shot the decedent." Appellant's Brief, at 15. Kulow further supports this claim by stating that, because the jury returned a guilty verdict for third-degree murder, "[c]ommon sense dictates that the jury did not believe the testimony of the witnesses nor the Commonwealth's theory as the jury only found [Kulow] guilty of murder in the third degree." *Id.* We disagree.[5]

_____

under the particular facts and circumstances of a specific appeal." ***Id. See also Commonwealth v. Preston***, 904 A.2d 1, 7-8 (Pa. Super. 2006) (en banc) ("In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices . . . for the purpose of unearthing . . . exhibits[.]").

Here, we decline to find waiver of Kulow's issues on appeal. Like in ***Feflie***, we may "rely on the trial court's detailed description of the [evidence.]" ***Feflie***, ***supra*** at 641. Additionally, the court's description of the contents of the video is adequately supplemented by Lazicki's and Leaman's testimony, which described the same observations and identifications of the objects and people recorded in the now-missing video. ***See*** Trial Court Opinion, 5/13/19, at 6 n.3.

[5] As an initial matter, our Supreme Court has previously explained that "a jury's acquittal on a charge may not be interpreted as a specific finding in relation to the evidence." ***Commonwealth v. Moore***, 103 A.3d 1240, 1244 (Pa. 2014) (internal quotation marks omitted). Moreover, we note that these claims raise challenges to the weight, not the sufficiency, of the evidence—a challenge that Kulow abandoned on appeal. Pursuant to Pa.R.A.P. 2116, "[n]o question will be considered unless it is stated in the statement of questions

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence is as follows:

> [W]e assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the [Commonwealth as] verdict-winner. We must determine whether there is sufficient evidence to enable the fact[-]finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of

---

involved or is fairly suggested thereby." Pa.R.A.P. 2116(a); **see also Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (appellant's duty is to present arguments sufficiently developed for our review; brief must support claims with pertinent discussion, references to record, and citations to legal authorities; we will not act as counsel and will not develop arguments on behalf of appellant).

We glean from the record that Kulow properly preserved his weight of the evidence claim in a post-sentence motion, **see** Pa.R.Crim.P. 607(A), and the trial court addressed the issue in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, 5/13/19, at 11-12. Nevertheless, Kulow failed to properly present this claim in his statement of the questions involved and failed to devote a separate part of the argument section of his brief to this claim. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Thus, we cannot address Kulow's weight of the evidence claim. **See** Pa.R.A.P. 2116(a); **see also Hardy**, **supra**.

- 7 -

> fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 532-33 (Pa. Super. 2006)).

"Murder in the third degree is an unlawful killing with malice but without the specific intent to kill." *Commonwealth v. Santos*, 876 A.2d 360, 363-64 (Pa. 2005); 18 Pa.C.S.A. § 2502(c). Our Supreme Court has explained that "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (quotation marks and citation omitted). "Malice may be inferred by considering the totality of the circumstances." *Commonwealth v. Thomas*, 656 A.2d 514, 516 (Pa. Super. 1995).

With regard to the defendant's convictions under the Uniform Firearms Act, section 6106 "prohibits the carrying of a firearm concealed on or about [] the defendant's person." *Commonwealth v. Peters*, 218 A.3d 1206, 1213 (Pa. 2019) (internal quotation marks omitted); 18 Pa.C.S.A. § 6106(a). A conviction under section 6108 "require[s] proof that appellant carried a firearm in the City of Philadelphia." *Commonwealth v. Williams*, 496 A.2d 31, 39 (Pa. Super. 1985); 18 Pa.C.S.A. § 6108.

Lastly, regarding PIC, "the offense requires proof of possession of such instrument, coupled with an intention to employ it criminally."

***Commonwealth v. Andrews***, 768 A.2d 309, 313 (Pa. 2001); 18 Pa.C.S.A. § 907(a). "It is the actor's criminal purpose that provides the touchstone of his liability" for possessing an instrument of crime. ***Id.*** at 317. Such purpose may be inferred from the circumstances surrounding the possession. ***Id.*** at 318. Our Supreme Court has long held that an "appellant's use of a loaded gun on his victim is more than sufficient to establish his guilt of possession of an instrument of crime." ***Commonwealth v. Santiago***, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting ***Commonwealth v. McNair***, 603 A.2d 1014, 1017 (Pa. 1992)).

In response to the sufficiency issues raised by Kulow, the trial court has provided a thorough and well-reasoned discussion explaining why these claims are meritless. ***See*** Trial Court Opinion, 5/13/19, at 8-11 (finding evidence sufficient to prove all elements of third-degree murder, violations of sections 6106 and 6108 of the Uniform Firearms Act, and PIC where: (1) Kulow requested Leaman to invite Jones over so Kulow could "talk to him"; (2) video evidence corroborated eyewitness testimony that Kulow was in same room as Jones at time of murder; (3) both Lazicki and Burns heard Kulow admit to shooting Jones; (4) Lazicki and Leaman both testified that Kulow was member of Breed Motorcycle Gang and that Kulow was upset with Jones because Jones falsely claimed to be enforcer for gang; (5) video evidence showed Kulow and unknown male dragging victim's body out front door of apartment building, dumping body on sidewalk, and quickly walking away; (6) Dr. Chu testified that Jones was shot from point-blank range in back left shoulder, gun was

pointed towards Jones' torso, and bullet pierced his lung, heart, liver, and pancreas; (7) Kulow did not possess license to carry firearm in City and County of Philadelphia; (8) video evidence showed Kulow arriving and leaving scene of murder via Frankford Avenue, a public street in Philadelphia; (9) and Kulow used gun to kill Jones).  Because we agree with the sound analysis employed by the Honorable Rose-Marie DeFino-Nastasi in her opinion, we adopt the trial court's analysis to dispose of Kulow's sufficiency issues raised in this appeal. **See Dunphy**, **supra**.  We instruct the parties to attach a copy of Judge DeFino-Nastasi's decision in the event of further proceedings.

Next, Kulow claims that the trial court erred when it included a jury charge on accomplice liability.  Kulow contends that because the Commonwealth did not charge him with criminal conspiracy, and because the District Attorney did not request the accomplice liability charge, the trial court abused its discretion in giving such an instruction.  **See** Appellant's Brief, at 14.  Additionally, Kulow argues that accomplice liability requires active and purposeful participation in criminal activity with others, but that the evidence demonstrates that he was only merely present when Jones was murdered. Specifically, Kulow claims:  there was no evidence of a conspiracy, and that he and the unknown male entered the apartment building separately; there was no testimony indicating Kulow and the unknown male knew one another or even spoke to one another while they were in the apartment, or that Kulow knew the unknown male possessed a firearm; and, finally, that any conclusion

- 10 -

that Kulow and the unknown male were accomplices would be based on assumption or speculation. *Id.* at 16-18.

Our standard of review for challenges to jury instructions is well-settled:

We review a challenge to a jury instruction for abuse of discretion or an error of law. We must consider the charge as a whole, rather than isolated fragments. We examine the entire instruction against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said. Furthermore, our trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld so long as they clearly and accurately present the law to the jury for its consideration. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2006) (internal citations, quotation marks, and brackets omitted).

Further, we have previously noted that "it [is] within the power of the trial court to decide whether additional information which was not requested by the jury [is] necessary to assist the jury in its understanding of the issue involved." *Commonwealth v. Graham*, 576 A.2d 371, 375 (Pa. Super. 1990). The court's instructions will be upheld if supported by the record, and against the background of all of the evidence. *See Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (party requesting jury instruction must "establish that the trial evidence would reasonably support a verdict

based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial") (internal quotation marks omitted); **see also Graham**, **supra** (trial court's *sua sponte* decision to make supplemental jury instruction on voluntary intoxication not an abuse of discretion where record evidence supported such instruction).

We find that, contrary to Kulow's claims, the testimony presented and video evidence viewed at trial support an accomplice liability instruction. Specifically, the video showed Kulow and the unknown male arriving at the crime scene within seconds of each other. **See** Trial Court Opinion, 5/13/19, at 7; N.T. Trial, 10/24/18, at 79-82; N.T. Trial, 10/25/18, at 86-87, 190. After the shooting, Leaman and Felix saw Kulow and the unknown male standing behind Jones. N.T. Trial, 10/24/18, at 73, 115; N.T. Trial, 10/25/18, at 195-96; N.T. Trial, 10/26/18, at 57-58. Leaman observed Kulow and the unknown male remove Jones from the apartment. N.T. Trial, 10/24/18, at 157-59. Burns testified that she saw Kulow and the unknown male drag Jones down the stairs and out the front of the apartment complex. N.T. Trial, 10/25/18, at 19-25. From there, the surveillance video captured Kulow and the unknown male positioning Jones' body behind a trashcan and walking away from the scene together. **See** Trial Court Opinion, 5/13/19, at 7; N.T. Trial, 10/24/18, 181-82; N.T. Trial, 10/25/18, at 100. Because there was ample evidence introduced at trial to support an instruction on accomplice liability, the trial

court did not abuse its discretion with regard to the jury charge.[6] ***See Graham***, ***supra***; ***Rush***, ***supra***. ***See also Commonwealth v. Mitchell***, 135 A.3d 1097, 1102 (Pa. Super. 2016) ("Accomplice liability may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid.") (internal citations and quotation marks omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/20

---

[6] Additionally, we note that Judge DeFino-Nastasi's instructions to the jury were nearly *verbatim* standard jury instructions. ***See*** N.T. Trial, 10/29/18, at 3-58. The court's instructions regarding accomplice liability were not an error of statement on the law. ***See id.*** at 18-22; ***compare*** Pa.S.S.J.I. (Criminal) § 8.306(a)(1). The trial court's instructions, when reviewed as a whole, were not inadequate, unclear, misleading, or confusing. ***See Rush***, ***supra***.