J-S44032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY KILSON | : | |
| | : | |
| Appellant | : | No. 224 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001287-2022

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED APRIL 8, 2025**

Corey Kilson ("Kilson") appeals from the judgment of sentence imposed following his convictions for first-degree murder and possessing an instrument of crime ("PIC").[1]  We affirm.

Kilson and Crystal Simmons ("Simmons") lived together at 2036 South Alden Street in Philadelphia with their two young children.  The two were engaged, but their relationship eventually deteriorated.  In late June of 2021, Kilson moved out of the home and Simmons changed the locks.  Soon after that, Simmons began dating the decedent, Arnold Kirskey ("Butch").  In the days preceding Butch's murder, Kilson repeatedly texted Simmons with messages professing his love, exhibiting jealousy over her new relationship, and wanting to rekindle their relationship.

_____

[1] See 18 Pa.C.S.A. §§ 2502(a), 907(a).

The trial court summarized the evidence presented regarding the events which took place on the night of Butch's murder, as follows:

> On July 6[], 2021, around 12:00 am, [Simmons] and [Butch] were at Simmons' residence . . . . Simmons invited Butch over to her home after a night out with her girlfriend. Before entering the house, the two exchanged a "hi" with the neighbor [who was friends with Kilson]. Shortly after entering the home, [Kilson] . . . persistently called her cell phone. The first phone call was at 12:23 am. [Kilson] continued to call Simmons phone at 12:23:32 am, 12:49:14 am, 12:49:40 am, 12:50:35 am, 12:51:38 am, 12:54:31 am, and 12:55:31 am. After the first five attempts, Simmons answered. During the conversation, [Kilson] aggressively questioned Simmons about her whereabouts and who she was with. Paul Haggerty, an expert in call detail records testified that all the phone calls were all coming from the same place, around the 2418 Mifflin Street cell tower. This is where [Kilson] was living at the time of the incident.
>
> Simultaneously with the calls, [Kilson] frantically texted Simmons. He again asked her if she was with "bul[.]"[FN] The texts exchange between Simmons and [Kilson] started around 12:42 am and the last text was sent at 1:25 am. The last text exchanged at 1:25 am read from Simmons to [Kilson] "I'll be home tomorrow." However, [Kilson's] text records showed Simmons deleted texts. [Kilson] texted Simmons and questioned whether she was at [] "their" house with Butch. Simmons responded, "Idk [(*sic*)] what the problem is agenda you the one who left, & no I'm at his house, I am not that disrespectful." "I'll be home tomorrow."
>
> _____
>
> [FN] "Bul" is slang for "boy." [Kilson] is referring to [the] decedent, Butch.
>
> _____
>
> Call detail records show that [Kilson's] phone started to move toward Alden Street at approximately 1:05:51 am. [Kilson] continued to call Simmons persistently at 1:17:38 am, 1:18:47 am, and 1:19:56 am. This time, [Kilson's] cell phone was hitting off a cell tower towards Elmwood Street, about half away between where [Kilson] was living at Mifflin Street and Simmons['] address. At 1:26:17 am a phone call was made, lasting eight

- 2 -

seconds. The cell phone hit a [distributed antennae tower ("DAS")] on the same block as 2036 South Alden Street.

Moments after the last text was sent and phone call was made, Simmons heard a noise downstairs. It was around 1:25 am. She attributed the noise to her cat. However, she left the bed, glanced out the window and saw [Kilson's] car double parked outside the house. After seeing [Kilson's] car, Simmons alerted Butch. [Despite Simmons' having changed the locks, Kilson was able to gain entry and went to the bedroom with a loaded gun.] Simmons made her way over to her bedroom door, which was closed. When she grabbed the handle to go out, [Kilson] was already at the door with his gun out. Simmons closed the door and attempted to hold it shut. [Kilson], however, forcefully flung open the door, hitting Simmons in the face with the butt of his gun. At this point, [Kilson] stood in the doorway, approximately two feet from Simmons and Butch, facing them. Butch pushed Simmons aside. As [Kilson said "yeah, you right,"] a shot was fired. [Kilson] shot Butch in the chest [and fled the home]. At the time of the incident, Butch was naked and did not have a firearm.

At 1:27 am, Simmons called the paramedics. Within minutes, Philadelphia Police Officer, Hugo Lemo[]s [("Officer Lemos")], responded to the radio call of a person shot at 2036 South Alden Street. Upon his arrival, Officer Lemo[]s heard a female screaming from upstairs. He entered the bedroom and noticed an unresponsive black male, suffering from an apparent gunshot wound to the chest, laying naked in a pool of blood. At that time, Officer Lemo[]s, and his partner, who arrived at the scene later, grabbed [Butch] by his hands and feet to the back of their patrol vehicle. The officers transported [Butch] to Penn-Presbyterian Medical Center. Around 11:45 am, [Butch] was pronounced dead. Dr. Victoria Sorokin, a forensic pathologist, testified that [Butch] died from a gunshot wound to his chest.

[Kilson] testified in his own defense. [He stated that he legally owned numerous firearms, rifles and shotguns, nine in total, possessed a valid carry license and worked as a security guard at Temple University. He claimed that he was still residing at 2036 South Alden Street on July 6, 2021, but had moved out for a few days to give Simmons space.] He testified that on the night in question, he decided that it was over between him and Simmons. He stated that he went back to the house to gather the

rest of his belongings around 1:25 in the morning. When he went into the house, he heard a noise. He got scared because no one was supposed to be home. [Kilson] drew his gun and surveyed the house. When he approached a door, he opened it halfway. [Kilson] testified that at that point, he got punched in the face. After being struck, a tussle over the gun began. [Kilson] grabbed the gun and testified that as he was pushing [Butch] off him, the gun went off.

Trial Court Opinion, 4/2/24, at 3-6 (footnote in original, unnecessary capitalization and record citations omitted).[2]

At trial, Kilson raised a self-defense claim. His counsel also argued that the castle doctrine applied.[3] The Commonwealth objected, and the trial court concluded the castle doctrine did not apply because: (1) Simmons gave Butch permission to be in the home; and (2) Kilson's subjective belief that Butch was in there unlawfully was insufficient for him to receive the castle doctrine instruction. **See** N.T. (Jury Trial Volume 2), 8/10/23, at 58, 93. The trial court, however, provided a general self-defense instruction to the jury.[4] **See** **id**. at 161-66.

_____

[2] For ease of review, when quoting the trial court's opinion, we have shortened the trial court's references of "Ms. Simmons" to "Simmons."

[3] **See** 18 Pa.C.S.A. 505(b)(2.1)(i)-(ii) (providing that a person is presumed to have a reasonable belief that deadly force is necessary for self-protection against enumerated conduct if the target of the deadly force — "the person against whom force is used" — is in the process of unlawfully and forcefully entering a dwelling or residence and the actor knows or has reason to know that the unlawful entry is occurring).

[4] **See** 18 Pa.C.S.A. § 505(a).

Ultimately, the jury convicted Kilson of first-degree murder and PIC. The trial court imposed the sentence of life imprisonment without the possibility of parole, followed by a concurrent term of two and one half to five years' imprisonment. Kilson filed a timely post-sentence motion arguing, *inter alia*, that the verdict was against the weight of the evidence, as well as challenging various evidentiary rulings and the trial court's failure to provide the castle doctrine jury instruction. Kilson's post-sentence motion was denied by operation of law on December 18, 2023. Kilson filed a timely notice of appeal. Both Kilson and the trial court complied with Pa.R.A.P. 1925.

Kilson presents the following issues for our review:

1. Was the evidence insufficient to sustain the conviction for [first-degree murder], as the Commonwealth failed to disprove, beyond a reasonable doubt, [Kilson's] use of justified force through his lawfully possessed firearm[?] The Commonwealth failed to disprove that [Kilson] reasonably believed he was in danger of death or serious bodily injury, where he had no duty to retreat from his own home, and even if he had a duty to retreat, could not reasonably do so with complete safety. Accordingly, the evidence did not support that [Kilson] deliberately and specifically intended to commit an unlawful killing[.]

2. Was the evidence insufficient to sustain the conviction for PIC, as [Kilson] did not possess his firearm with any intent to employ it criminally, and lawfully used it in self-defense?

3. Did the trial court err by denying a "castle doctrine" jury instruction pursuant to 18 Pa.C.S.A. § 505(b)(2.1), as [Kilson's] ties to the Alden Street address established it was his residence[?] Such ties included but are not limited to, a lease, clothes and personal effects, keys to the home, *etc*. Additionally, although [Simmons] granted [Butch] permission into the home, permission was surreptitiously given without [Kilson's] knowledge. Denying the jury instruction based on

- 5 -

this surreptitiously granted permission, was erroneous as the purpose of the jury instruction concerns an actor's knowledge and intent, and the reasonableness of conduct based on this knowledge[.]

4. Was the guilty verdict for [first-degree murder] against the weight of the evidence as [Simmons'] testimony was unreliable and untrustworthy and it was established at trial she destroyed evidence by deleting text messages, after being court ordered to preserve them[?] Additionally, [Kilson], who enjoyed a reputation for being peaceful, law abiding and truthful, testified credibly that he, while in his home, acted in justified self-defense when using his lawfully possessed firearm against an unknown attacker. Accordingly, the guilty verdict for PIC was also against the weight of the evidence as the [Kilson] did not possess his firearm with any intent to employ it criminally[.]

Kilson's Brief at 8 (issues reordered for ease of disposition and unnecessary capitalization omitted).

Kilson's first two issues challenge the sufficiency of the evidence supporting his convictions for first-degree murder and PIC. Since both issues are interrelated, we will review them together. Our review of a sufficiency claim is well-settled:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted, and italicization added).

The elements that the Commonwealth must prove to sustain a conviction for first-degree murder are: (1) the unlawful killing of a human being; (2) that the defendant was responsible for the killing; and (3) that the defendant acted with malice and a specific intent to kill. *See Commonwealth v. Ballard*, 80 A.3d 380, 390 (Pa. 2013); *see also* 18 Pa.C.S.A. § 2502(a). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). The Commonwealth may use circumstantial evidence to prove that a defendant had the specific intent to kill; and a jury can "infer that the defendant intended to kill a victim based on a defendant's use of deadly weapon on a vital part of the victim's body." *Commonwealth. v. Housman*, 226 A.3d 1249, 1271 (Pa. 2020) (citation omitted).

To establish a conviction for PIC the Commonwealth must prove that the defendant: (1) possessed an object that is an instrument of crime and (2) intended to use the object for a criminal purpose. *See* 18 Pa.C.S.A. § 907(a).

> "[T]he actor's criminal purpose . . . provides the touchstone of his liability" for the PIC offense, and "[s]uch purpose may be inferred from the circumstances surrounding the possession." Criminal intent to support a PIC conviction cannot be inferred where the defendant used the instrument solely for self-defense.

- 7 -

*Commonwealth v. Brockington*, 230 A.3d 1209, 1213 (Pa. Super. 2020) (citations omitted).

Section 505(a) of the Crimes Code provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). Section 505(b)(2), however, restricts the use of "deadly force:"

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury, . . . ; nor is it justifiable if:
>
> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling . . . , unless he was the initial aggressor . . ..

18 Pa.C.S.A. § 505(b)(2)(i)-(ii).

> In considering a self-defense claim, we must bear in mind:
>
> When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (citations omitted). "The finder of fact is not required to believe the defendant's

testimony that he thought that he was in imminent danger and acted in self-defense." *Commonwealth v. Green*, 273 A.3d 1080, 1088 (Pa. Super. 2022) (citations omitted). "Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense." *Id*.

Therefore, the Commonwealth sustains its burden of disproving self-defense if it establishes, beyond a reasonable doubt, at least one of the following: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted). Moreover:

> The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.
>
> > The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.
>
> [T]he use of deadly force itself "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant]

acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant "used more force than reasonably necessary to protect against death or serious bodily injury."

*Id*. at 787-88 (citations omitted) (emphasis in original omitted).

Self-defense is an affirmative defense to a first-degree murder charge and a PIC charge. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1221 (2009). Regarding the PIC charge, as our Supreme Court has explained, if the evidence was insufficient to support charges of murder on the basis of self-defense, then the evidence would also be insufficient to support the PIC charge. *See Commonwealth v. Weston*, 749 A.2d 458, 461 (Pa. 2000). The Court reasoned that if the defendant was acting in self-defense, then he could not have intended to employ the gun criminally, because employing the gun in self-defense would be to employ the gun in a lawful manner. *See id*; *see also* 18 Pa.C.S.A. § 907(a).

First, Kilson argues that the Commonwealth failed to prove that he committed first-degree murder because he was in his own home, had no duty to retreat, and even if he had a duty to retreat, he could not do so with complete safety because Butch attacked him. Kilson contends that he reasonably believed that he was in danger of death or serious bodily injury, and he therefore used justified force in self-defense. Kilson maintains that he did not provoke the altercation, and his actions were reasonable because

Simmons had told him that she and Butch were not at the home; therefore, he had every reason to believe that there was an intruder in his home.[5]

Second, Kilson avers that the Commonwealth did not provide sufficient evidence to sustain his PIC conviction because he legally owned the gun and had no criminal intent to use it criminally. Instead, he claims, he was in his own home, which he believed to be vacant, and used his gun to protect himself from an intruder.[6]

---

[5] On appeal in his reply brief, Kilson claims for the first time that the castle doctrine statute and the mistake of fact statute under 18 Pa.C.S.A. § 304 should apply together. *See* Kilson's Reply Brief at 6. Kilson never raised this argument at trial and has consistently argued his justification for shooting Butch based on the castle doctrine and self-defense. Accordingly, Kilson's new argument based on mistaken belief is waived. *See* Pa.R.A.P. 302(a) (stating "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in the Rule 1925(b) statement are waived).

[6] We note that Kilson conflates his sufficiency challenges with a weight of the evidence claim. The majority of Kilson's sufficiency claim consists of arguments that certain evidence should have been accorded greater or lesser weight than other evidence. For example, Kilson attempts to attack Simmons' credibility while bolstering his own, providing alternate inferences and explanations. Specifically, he continues to present his version of the events, blaming Simmons for his actions because: (1) "[he] entered his home after being advised by Simmons that neither she nor [Butch] were there," (2) "was unaware that [Butch] was a guest at the home," and emphasizing that (3) "[she] lied to [him]." Kilson's Brief at 31-32, 34. However, these arguments implicate the weight of the evidence and credibility of witnesses rather than the sufficiency of the evidence and are wholly inappropriate for a sufficiency challenge. *See Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012) (holding that a claim that factfinder should have believed appellant's version of events rather than Commonwealth's goes to weight, not sufficiency of evidence); *see also Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super 2022) (holding that a sufficiency of the evidence review does not include
*(Footnote Continued Next Page)*

In its opinion, the trial court concluded that the Commonwealth provided sufficient proof of Kilson's conviction for first-degree murder:

[T]he credible testimony of the eyewitnesses and the identification of [Kilson] as the shooter was sufficient to sustain [Kilson's] murder conviction. . . .

The jury was free to credit the witnesses' testimony of Simmons and [Kilson] as the man who walked into the home and shot Butch. Furthermore, the jury could infer that [Kilson] ha[d the] specific intent to kill because he walked into the house, went upstairs, and shot Butch in a vital part of his body, his chest.

Trial Court Opinion, 4/2/24, at 11.

Next, concerning Kilson's self-defense claim the trial court determined that:

In the instant case, [Kilson] would have to prove the ordinary rules of self-defense to prevail on the claim. Here, [Kilson] did not provide convincing evidence that he reasonably believed that he was in imminent danger of death or serious bodily injury, . . . and that it was necessary to use deadly force to prevent such harm. In fact, [Kilson] was the one who walked into the house with a gun. [Butch] was unarmed and naked. [Kilson] provoked the threat that resulted in the slaying. Prior to entering the house, [Kilson] harassed Simmons by calling and texting her multiple times. After the last text was sent, when Simmons lied, [Kilson] immediately went into the house. [Kilson] knew the two of them were in the house together, because he began calling Simmons immediately after she saw one of [Kilson's] friends outside the house when she walked in with [Butch], and then he

_____

an assessment of credibility of testimony offered by the Commonwealth, which implicates the weight of the evidence). While we could reject Kilson's sufficiency challenge on this basis alone, we decline to do so. ***See Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999) (holding that where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that the appellant provides goes to the weight of the evidence, the sufficiency challenge must fail).

and his phone began moving towards her house well before she texted him saying she wasn't there.

As such, the Commonwealth's evidence rebutted [Kilson's] claim of self-defense beyond a reasonable doubt.

Trial Court Opinion, 4/2/24, at 15-16.

Regarding Kilson's conviction for PIC, the trial court stated that "[a] person is guilty of PIC if he possesses any instrument of crime with intent to employ it criminally." *Id*. at 16. Relying on this Court's decisional precedent,[7] the trial court reasoned that: "the credible eyewitness testimonial evidence here is sufficient to show that [Kilson] possessed a firearm and had the intent to criminally employ it through his decision to kill [Butch. Furthermore, t]he jury rejected [Kilson's] self-defense claim . . .." *Id*. at 17.

Viewing the evidence in the light most favorable to the Commonwealth and giving it all reasonable inferences as verdict winner, we conclude that the record supports the trial court's determination that the evidence was sufficient to prove Kilson's first-degree murder and PIC convictions. The

_____

[7] The trial court cited to this Court's analysis in *Commonwealth v. Jeter*, 418 A.2d 625, 628 (Pa. Super. 1980) (stating that "evidence that the defendant entered the victim's bar, drew a loaded gun from her pocket and fired it twice at the victim was sufficient to sustain a conviction for PIC"); *Commonwealth v. McNair*, 603 A.2d 1014, 1017 (Pa. Super. 1992) (observing that "evidence that the defendant used a loaded gun to shoot the victims was sufficient to support the conviction for PIC"), and *Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980) (explaining that "even if there is no direct evidence that the defendant concealed the weapon on his person, it can reasonably be inferred from the victim's testimony"). *See* Trial Court Opinion, 4/2/24, at 16-17.

Commonwealth's evidence showed that Kilson armed himself with a gun before entering Simmons' house. Despite Simmons' having changed the locks, Kilson was able to gain entry and went to the bedroom with a loaded gun intentionally shooting Butch in the chest. Furthermore, the Commonwealth presented sufficient evidence to rebut Kilson's self-defense claim beyond a reasonable doubt by establishing that Kilson **provoked** the altercation by unlawfully entering the home that he no longer resided in, forcing his way into the bedroom, and shooting Butch — who was naked and unarmed. We therefore find that Kilson's first two issues merit no relief.

In his third issue, Kilson contends that the trial court erred by not providing a castle doctrine jury instruction. The standard of review regarding a trial court's decisions on jury instructions is well-settled:

> [O]ur standard of review when considering the denial of jury instructions is one of deference an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law. [Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.

*Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018)) (citations and quotation marks omitted). Additionally,

> [w]e have established that the standards for permitting a castle-doctrine instruction are the same as when reviewing whether a self-defense instruction is appropriate. Thus, a court does not necessarily assess burdens of proof when considering the applicability of a castle-doctrine instruction, but instead whether there was any evidence to justify the instruction.

*Id.* at 1288.

- 14 -

Under the castle doctrine, the defendant is presumed to have a reasonable belief that deadly force was necessary to protect himself when **both** of the following conditions are met:

(i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling [or] residence . . . ; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling [or] residence . . ..

(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S.A. § 505(b)(2.1)(i)-(ii); **Commonwealth v. Childs**, 142 A.3d 823, 830-31 (Pa. 2016).

"[T]he castle doctrine is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." **Childs**, 142 A.3d at 824 n.1 (citations omitted). However, a defendant is not entitled to this defense if the person against whom the force is used has the right to be in or is a lawful resident of the dwelling, or residence. **See** 18 Pa.C.S.A § 505(b)(2.1)(i). Further, as our Supreme Court has explained, "[s]ection 505(b)(2.1) does not . . . broaden the rights of the accused when asserting a castle doctrine defense[, but i]nstead, provides an evidentiary mechanism to aid in the factfinder's evaluation of the merits of a castle doctrine defense." **Childs**, 142 A.3d at 831-32.

Kilson argues that the trial court erred in denying a castle doctrine jury instruction because he was in his own home. Kilson maintains that the trial court erred by determining that Butch had a right to be there because Simmons surreptitiously gave him permission by inviting him in. Kilson contends that because he did not know that Simmons had given Butch permission to be in the house, he was entitled to a jury instruction on the castle doctrine. Kilson claims that Simmons misled him, and there was no evidence that he knew she and Butch would be at the home. Furthermore, Kilson asserts that the trial court erred because the castle doctrine jury instruction concerns the mental state and intent of the actor to justifiably use deadly force.

Here, the trial court rejected Kilson's request for the castle doctrine instruction and instead delivered a general self-defense instruction in accordance with section 505(a). As the trial court explained,

> [Kilson] did not provide evidence to warrant a jury instruction for the castle doctrine. The court reasoned that the resident of the home at the time, Simmons, gave [Butch] permission to be in the home. Additionally, the court noted as in *Cannavo*, that [Kilson's] subjective belief that [Butch] was in there unlawfully was not enough for him to receive the castle doctrine instruction. Since again, Simmons invited him to be at the home, the castle doctrine would not apply.

Trial Court Opinion, 4/2/24, at 9 (unnecessary capitalization omitted).

We conclude that the trial court did not err or abuse its discretion in denying the Kilson's request for the castle doctrine instruction because he failed to satisfy the requirements of *both* subsections of 505(b)(2.1).

Subsection 2.1(i) requires evidence that the victim was in the process of unlawfully and forcefully entering the actor's dwelling, or residence, while subsection 2.1(ii) requires the actor to know or have reason to believe that the unlawful and forceful entry or act is occurring or has occurred. *Cannavo*, 199 A.3d at 1289.

Kilson testified on his own behalf and raised self-defense at trial claiming that Simmons "surreptitiously" gave Butch permission into the home without his knowledge. Prior to the court's instructions to the jury, his counsel requested a charge directing the jury to consider the castle doctrine which would inform the jury of a presumption of a reasonable belief that deadly force was necessary for Kilson to defend himself. However, the evidence adduced at trial was that Simmons lawfully admitted Butch into the house. There was no evidence he was in the home unlawfully or had forcefully entered Simmons' house. The castle doctrine is only warranted when the victim is unlawfully in the home. *See* 18 Pa.C.S.A. 505(b)(2.1)(i). Regardless of Kilson's subjective belief, Butch was lawfully in the home at Simmons' invitation. *See* 18 Pa.C.S.A. 505(b)(2.1)(ii). Therefore, the trial court appropriately denied the castle doctrine instruction since the presumption in subsection 2.1 does not apply because: (1) Kilson's "personal belief implicates only subsection 2.1(ii);" and (2) "[e]vidence supporting subsection 2.1(i) was also necessary . . .." *Cannavo*, 199 A.3d at 1289.

Although the evidence did not warrant a section 505(b)(2.1) castle doctrine instruction, the trial court did appropriately deliver a self-defense instruction in accordance with section 505(a). **See** N.T., 8/10/23, at 161-66. Kilson was not prejudiced by the denial of a castle doctrine instruction unsupported by the evidence as he properly received an instruction that comported with the evidence presented. **See Cannavo**, 199 A.3d at 1282. Finding neither abuse of discretion nor error of law in the trial court's denial of a castle doctrine instruction, we shall not disturb that ruling. Thus, Kilson's third issue fails.

In his fourth issue, Kilson challenges the weight of the evidence supporting his convictions. Our review of a weight claim is well-established:

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A trial court may sustain a weight challenge only if the verdict is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. We defer to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

**Commonwealth v. Clemens**, 242 A.3d 659, 667 (Pa. Super. 2020) (citations and quotation marks omitted).

Here, Kilson argues that Simmons lied to him about not being home. He contends that Simmons deleted text messages and destroyed evidence. Kilson maintains that he used justified force to defend himself in his own

- 18 -

home. Kilson asserts that Simmons had a motive to lie to cover for her own deceptive behavior.

In addressing Kilson's weight of the evidence claim, the trial court explained:

> The trial court observed the evidence that was presented to the jury and determined that the resulting verdict does not shock the conscience. Additionally, this court appropriately recognizes that the jury was free to credit the consistent, corroborated evidence and find that [Kilson] shot [Butch] with the specific intent to kill. Further, the decision to credit the Commonwealth's witness testimony does not "shock the consci[ence] . . .."

Trial Court Opinion, 4/2/24, at 19.

Based on our review, we discern no abuse of discretion by the trial court in denying Kilson's post-sentence motion challenging the weight of the evidence. Here, Kilson does not explain how the trial court abused its discretion in denying his post-sentence motion. Instead, he attacks Simmons' credibility while bolstering his own. It was the sole province of the jury to weigh the credibility of two witnesses giving differing accounts of the crime. *See Clemens*, 242 A.3d at 667. Simply because the jury credited Simmons and discredited Kilson does not in any way make the verdicts shocking. *See id*. Additionally, because the trial court had the opportunity to hear and see the evidence presented, this Court gives the gravest consideration to the findings and reasons advanced by the court when reviewing its determination regarding the weight of the evidence. *See id*. We decline to disturb the court's determination that the verdict did not shock its sense of justice, where

the evidence overwhelmingly proved Kilson's guilt. Accordingly, Kilson's fourth issue merits no relief.

Having found no merit to any of Kilson's appellate issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/8/2025